Benjamin J. Mann, Bar Number 08371
Amanda Ferguson, Bar Number 09329
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone: 801-990-3711
Fax: 801-328-9714
Email: amanda@hwmlawfirm.com
File No: ND10078
**Attorney for Lakeview Loan Servicing, LLC**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>THOMAS GEORGE BURFIELD IV<br><br>Debtor. | Chapter 13<br><br>Case No.  19-30060 |

MOTION FOR RELIEF FROM
AUTOMATIC STAY (REAL PROPERTY)

Lakeview Loan Servicing, LLC ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362d(1), for relief from the automatic stay with respect to certain real property of the Debtor having an address of 2030 N 5th St, Bismarck, ND 58501 (the "Property"), for all purposes allowed by the Note (defined below), the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1.     A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on February 11, 2019.

2.     The Court confirmed the Debtor's Chapter 13 Plan on June 4, 2019 (Docket Entry 44).

3.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $108,109.00 (the "Note"). A copy of the Note is attached hereto as Exhibit "A". Movant is an entity entitled to enforce the Note.

4.      Pursuant to that certain Mortgage dated May 6, 2010 and recorded on May 26, 2010 at Document No. 725948 in the records of Burleigh County, North Dakota (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit "B".  The Property is legally described as follows:

> Lot 17, Block 16, Register's Second Addition to the City of Bismarck, Burleigh County, North Dakota.

5.      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to the Assignment of Mortgage dated May 30, 2018 and recorded on September 4, 2018 at Document No. 876794 in the records of Burleigh County, North Dakota. A copy of the Assignment of Mortgage is attached hereto as Exhibit "C".

6.      As of May 27, 2022, the outstanding amount of the Obligations, less any partial payments or suspense balance is $102,826.44.  The fair market value of Creditor's collateral per the Debtor's Schedule A is $177,300.00.

7.       The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor as of May 27, 2022:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 7 | August 1, 2020 | February 1, 2021 | $883.68 | $6,185.76 |
| 8 | March 1, 2021 | October 1, 2021 | $837.31 | $6,698.48 |
| 7 | November 1, 2021 | May 1, 2022 | $850.95 | $5,956.65 |
| Less amount in suspense: | | | | ($401.39) |

Total: <u>$18,439.50</u>

8.      In addition to the amounts reflected in the chart above, Debtor is obligated to make on-going monthly payments, pursuant to the express terms of the Note and Mortgage that have or will accrue after May 27, 2022.

9.      Cause exists for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) due to the Debtor's failure to make ongoing obligated payments.

10.      In the event the automatic stay in the case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent or custodian, has possession of the original Note. The Note is either made payable to Movant or has been duly endorsed.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      For such other relief as the Court deems proper.

Dated June 10, 2022

Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111


 /s/ Amanda Ferguson
Amanda Ferguson
Attorney for Lakeview Loan Servicing, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

THOMAS GEORGE BURFIELD IV

Debtor.

Chapter 13

Case No. 19-30060

## NOTICE OF OPPORTUNITY FOR HEARING

TO:    DEBTORS, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

YOU ARE HEREBY NOTIFIED that the annexed Motion for Relief from Automatic Stay has been filed by the firm of HALLIDAY, WATKINS & MANN, P.C., whose address is 376 East 400 South, Suite 300, Salt Lake City, UT 84111, as attorney for Lakeview Loan Servicing, LLC.

YOU ARE HEREBY FURTHER NOTIFIED that, unless you or another party in interest files an objection in writing to the relief requested in the Motion, within fourteen (14) days after mailing of this notice, the relief requested may be granted without further notice or order of the Court, on or after said date.

YOU ARE HEREBY FURTHER NOTIFIED that, if an objection in writing to the relief requested in the Motion is timely filed, any party in interest may obtain a hearing on the Motion and the objection.  An objection must be filed both with, the Clerk of the Bankruptcy Court, U.S. Courthouse 655 First Avenue North, Suite 201, Fargo, ND 58201, and with the attorney whose name is shown above.

Dated June 10, 2022

Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111

/s/ Amanda Ferguson
Amanda Ferguson
Attorney for Lakeview Loan Servicing, LLC

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I caused for a true and correct copy of the foregoing NOTICE OF OPPORTUNITY FOR HEARING, annexed MOTION FOR RELIEF FROM AUTOMATIC STAY, by first class mail with postage duly prepaid, on June 10, 2022, to the following persons:

Thomas George Burfield IV
2030 N. 5th St.
Bismarck, ND 58501
Debtor
Via U.S. Mail

Sara Diaz
3523 45th St. S., Suite 102
Fargo, ND 58104
Debtor's Attorney
Via ECF

Kyle L. Carlson
P.O. Box 519
Barnesville, MN 56514
Chapter 13 Trustee
Via ECF

Robert B. Raschke
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
United States Trustee
Via ECF

                                     Halliday, Watkins & Mann, P.C.
                                     376 East 400 South, Suite 300
                                     Salt Lake City, UT 84111

                                      /s/ Amanda Ferguson
                                     Amanda Ferguson
                                     Attorney for Lakeview Loan Servicing, LLC

# EXHIBIT "A"





Multistate                           **NOTE**              FHA Case No.

May 06, 2010
[Date]

2030 N 5TH ST
Bismarck, ND 58501
[Property Address]

**1. PARTIES**
   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
FIRST COMMUNITY CREDIT UNION

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
   In return for a loan received from Lender, Borrower promises to pay the principal sum of   ONE HUNDRED EIGHT
THOUSAND   ONE HUNDRED NINE   AND 00/100

Dollars (U.S. $ 108,109.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of   FIVE AND 000/1000
percent (            5.000 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
   (A)  Time
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
July 1st        , 2010      . Any principal and interest remaining on the first day of June
2040       , will be due on that date, which is called the "Maturity Date."
   (B)  Place
      Payment shall be made at 310 10TH ST SE
JAMESTOWN, ND 58402                         or at such place as Lender may designate in writing
by notice to Borrower.
   (C)  Amount
      Each monthly payment of principal and interest will be in the amount of U.S. $ 580.35       . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
   (D)  Allonge to this Note for payment adjustments
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services                                     VMP1R (0906)
                                                                                            Page 1 of 3

Exhibit A

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   FOUR AND 000/1000                percent (          4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)      _____ (Seal)
THOMAS G BURFIELD IV                -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                      -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

Rita Calendo, Assistant Vice President
PHH Mortgage Corporation

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



VMP1R (0809)
Page 3 of 3

# ALLONGE

BORROWER NAME:          THOMAS G BURFIELD IV

PROPERTY ADDRESS:       2030 N 5TH ST
                        Bismarck, ND 58501

LOAN NUMBER:            ▉▉▉▉▉▉▉▉

ALLONGE TO THAT CERTAIN NOTE DATED:          May 06, 2010

IN THE AMOUNT OF:          $108,109.00

PAY TO THE ORDER OF PHH MORTGAGE CORPORATION, WITHOUT RECOURSE.

DATE:                   May 06, 2010

SIGNATURE: _____
                        KELLY HEYER

TITLE:          VICE PRESIDENT OF LENDING

NAME OF CREDIT UNION:  FIRST COMMUNITY CREDIT UNION

# EXHIBIT "B"



**725948**

First Community Credit Union    RecpMTG    $34.00
Page: 1 of 9
5/26/2010 10:29 AM
Burleigh County

Return To:

**FIRST COMMUNITY CREDIT UNION**
**310 10TH ST SE**
**JAMESTOWN, ND 58402**

Prepared By:

**ELLIOTT CARMACK**
**310 10TH ST SE**
**JAMESTOWN, ND 58402**

—————————————————————[Space Above This Line For Recording Data]———————————————————————

**State of North Dakota**               # MORTGAGE

FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on **May 06, 2010**
The Mortgagor is **THOMAS G BURFIELD IV, A SINGLE MAN**.

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc.
("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as
mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FIRST COMMUNITY CREDIT
UNION**

("Lender") is organized and existing under the laws of **THE STATE OF NORTH DAKOTA**        , and
has an address of **310 10TH ST SE, JAMESTOWN, ND 58402**
                                            . Borrower owes Lender the principal sum of
**ONE HUNDRED EIGHT   THOUSAND   ONE HUNDRED NINE   AND 00/100**
                                                                          Dollars
(U.S. $**108,109.00**        ). This debt is evidenced by Borrower's note dated the same date
as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid
earlier, due and payable on   **June 1, 2040**                and for interest at the yearly rate of
     **5.000**  percent at Lender's address shown above. This Security Instrument secures to Lender: (a)

**FHA North Dakota Mortgage with MERS - 4/96**
Wolters Kluwer Financial Services
VMP®-4N(ND) (0805)        Amended 12/05
Page 1 of 9        Initials:

725948

First Community Credit Union                    Rec/MTG

*Debbie Froshus*

$34.00
Page 2 of 9
5/28/2010 10:29 AM
Burleigh County

the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Burleigh**                                                    County, North Dakota:
**LOT 17, BLOCK 16, REGISTER'S SECOND ADDITION TO THE CITY OF BISMARCK, BURLEIGH COUNTY, NORTH DAKOTA.**

Parcel ID Number:
which has the address of **2030 N 5TH ST**                                              [Street]
**Bismarck**                                [City], North Dakota **58501**          [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument: but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP®-4N(ND) (0805)                          Page 2 of 9                          Initials:

725948

First Community Credit Union        Rec)MTG

*Debbie Froshus*

$34.00
Page: 3 of 9
5/26/2010 10:29 AM
Burleigh County

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or



Initials: _____

**725948**

First Community Credit Union          Rec/MTG

Debbie Kirschner

$34.00
Page. 4 of 9
5/28/2013 10:29 AM
Burleigh County

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: 

725948

First Community Credit Union        Rec/MTG

$34.00
Page 5 of 9
5/26/2010 10:29 AM
Burleigh County

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _____

||||||||||| ||| ||||| ||||| ||||| ||||| ||||| ||| |||||   **725948**
First Community Credit Union                          Req|MTG
                                                            $34.00
_Debbie Kushue_                                             Page. 6 of 9
                                                            5/28/2010 10:29 AM
                                                            Burleigh County

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: _____

725948

First Community Credit Union          RecjMTG

Debbie Kirshner

$34.00
Page 7 of 9
5/26/2010 10:29 AM
Burleigh County

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead. I understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale and that, by signing this contract, I voluntarily give up my right to this protection for this property with respect to claims based upon this contract.**

_____ 5-1-10
Borrower **THOMAS G BURFIELD IV**          Date

_____
Borrower          Date

_____
Borrower          Date

_____
Borrower          Date

_____
Borrower          Date

_____
Borrower          Date

_____
Borrower          Date

_____
Borrower          Date

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider              ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider



725948

First Community Credit Union                    Reg|MTG

*Debby Kroshus*

$34.00
Page 8 of 9
5/28/2010 10:29 AM
Burleigh County

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)

                                            **THOMAS G BURFIELD IV**          -Borrower

.

_____          _____(Seal)
                                                                             -Borrower

_____(Seal)    _____(Seal)
                          -Borrower                                          -Borrower

_____(Seal)    _____(Seal)
                          -Borrower                                          -Borrower

_____(Seal)    _____(Seal)
                          -Borrower                                          -Borrower

**725948**

First Community Credit Union              Rec:MTG

$34.00
Page. 9 of 9
5/26/2010 10:26 AM
Burleigh County

*Debbie Kinchus*

STATE OF NORTH DAKOTA, **Burleigh**                                    **County ss:**

The foregoing instrument was acknowledged before me this **May 06, 2010**
by **THOMAS G BURFIELD IV**, A SINGLE MAN.

My Commission Expires:
(Seal)

Notary Public

> JANET L SAND
> Notary Public
> State of North Dakota
> My Commission Expires March 29, 2014

VMP®-4N(ND) (0605)                    Page 9 of 9                    Initials

# EXHIBIT "C"

This document prepared by:
Haylee Cripe, Attorney
Mackoff Kellogg Law Firm
38 Second Avenue East
Dickinson, North Dakota 58601
Ph: (701) 227-1841

<u>ASSIGNMENT OF MORTGAGE</u>

**Min:** ████████████
MERS phone number of 888.679.6377
MERS address: P.O. Box 2026, Flint, MI 48501-2026

FOR VALUE RECEIVED, the receipt of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. as nominee for First Community Credit Union , a corporation, with post office address of P.O. Box 2026, Flint, MI 48501-2026, does hereby transfer and assign to Lakeview Loan Servicing, LLC, whose address is 4425 Ponce De Leon Blvd., MS5-251, Coral Gables, FL 33146 all of its right, title and interest in a certain Mortgage, Thomas G Burfield IV, A Single Man mortgagor (s), executed and delivered to Mortgage Electronic Registration Systems, Inc. as nominee for First Community Credit Union, Mortgage, dated on May 6, 2010 and recorded on May 26, 2010 as 725948, upon the following described premises situated in the County of Burleigh, State of North Dakota, to wit:

Lot 17, Block 16, Register's Second Addition to the City of Bismarck, Burleigh County, North Dakota

(The legal description was obtained from a previously recorded instrument)

MACKOFF KELLOGG LAW FIRM
*Debbie Kroshus*
**Recorded Electronically**

**876794**
$30.00
Page: 1 of 3
9/4/2018 4:18 PM
Burleigh County

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc. as nominee for First Community Credit Union, has caused these presents to be executed in its corporate name by AUTUMN D. ALVINO , its ASSISTANT SECRETARY , and this 30 th day of May 2018 .

Mortgage Electronic Registration Systems, Inc. as nominee for First Community Credit Union its Successors and Assigns

AUTUMN D. ALVINO

By: _____

Its: _____ ASSISTANT SECRETARY

STATE OF VIRGINIA )

) ss.

CITY OF VIRGINIA BEACH )

On this 30 day of May 2018 , before me, the undersigned, a Notary Public in and for said County and State, personally appeared AUTUMN D. ALVINO personally known to me to be the Assistant Secretary of the _____ Mortgage Electronic Registration Systems, Inc. as nominee for First Community Credit Union its Successors and Assigns that executed the instrument and acknowledged to me that such Autumn D Alvino executed the same pursuant to its by-laws it a resolution of its Board of Directors.

Notary Public VIRGINIA
State of VIRGINIA BEACH
City of
Commission expires: 3/31/2022

BEVERLY JEAN TRAYLOR

BEVERLY JEAN TRAYLOR
Notary Public
Commonwealth of Virginia
Registration No. 7768556
My Commission Expires March 31, 2022

MACKOFF KELLOGG LAW FIRM
Debbie Kroshus
Recorded Electronically

876794
$30.00
Page: 2 of 3
9/4/2018 4:18 PM
Burleigh County

876794
$30.00
Page: 3 of 3
9/4/2018 4:18 PM
Burleigh County

MACKOFF KELLOGG LAW FIRM

*Debbie Kroshus*

**Recorded Electronically**